UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARILYN FORD                              *       CIVIL ACTION

VERSUS                                    *       NO. 04-662

LOUISIANA DEPARTMENT OF LABOR             *       SECTION "B"

### ORDER AND REASONS

Before the Court is Defendant's motion for summary judgment. (Rec. Doc. No. 17). For the following reasons, **IT IS ORDERED** that Defendant's motion is hereby **DISMISSED** in part, and **GRANTED** in part.

### Background

Plaintiff, Marilyn Ford, was hired in March 2002 by Defendant, the Covington unemployment office of the Louisiana Department of Labor ("DOL"). Initially, Bill Warner ("Warner") was the manager of the Covington office and, as such, was Plaintiff's supervisor, until he retired on October 2, 2003. At that time, Pam Thomas ("Thomas"), manager of the Slidell office, was asked to be the acting manager for the Covington location. Both Warner and Thomas reported to Rudy Stahl ("Stahl"), the Work Force Development Manager for DOL unemployment offices in Covington, Slidell and Chalmette. Stahl reported to Bernadine Dupre ("Dupre"), the Regional Director of Work Force Development for several parishes.

Near the end of Warner's tenure as Manager of the Covington

1

office, where Plaintiff worked, he designated Plaintiff's co-worker, Mike Messina ("Messina"), as "Lead Worker," whose responsibility it was to assign daily work tasks. Messina is a permanent DOL employee, not a temporary appointment like Plaintiff. In August 2003, Plaintiff complained to Warner that the women in the office were doing all the work and that Messina made comments to her and in general that she found offensive to women. Subsequently, there was an email sent out to the Covington staff members clarifying office standards, management expectations and highlighting Messina's role as Lead Worker.

In September 2003, the three temporary employees in the Covington office, including Plaintiff, were informed that they might be laid off during that month due to budget cuts. In fact, two such employees were let go, leaving Plaintiff as the only temporary employee still on staff at that office.

In October 2003, after Warner had retired and Thomas was acting as supervisor of the Covington office, Plaintiff again complained of unequal work distribution among herself, Messina and a third employee, who was male. Thomas informed Plaintiff that Thomas and Dupre were investigating the situation and changes would be made. Thomas subsequently instituted the "JISB system" to track the work distribution. On October 8, 2003, Thomas received and approved Plaintiff's request for leave on October 29, which request form had "Apt. w/EEOC" written in the "Remarks" section. On

October 28, 2003, Plaintiff sent an email to Dupre complaining that the work was unfairly distributed among herself and the two male employees. Dupre asked Stahl to investigate the complaint and offered Plaintiff a transfer to another office. Plaintiff declined the transfer. As a result of that complaint, Thomas refined the JISB tracking system and was able to confirm that, in fact, Plaintiff was completing more unemployment claims than her male peers.

Plaintiff did not perceive any improvement in the work distribution as a result of the implementation of the JISB tracking system or her complaints. On January 6, 2004, she informed Thomas that she wanted to quit because of the uneven workload. Thomas encouraged Plaintiff to file a formal grievance in lieu of quitting. On January 27, 2004, a verbal confrontation between Messina and Plaintiff occurred, which was witnessed by someone who filed a complaint stating that Plaintiff responded to Messina in a loud and unprofessional manner. As a result of the complaint, Thomas emailed both Plaintiff and Messina on January 28, reminding them that they needed to maintain a professional atmosphere in the office. That same day, Plaintiff completed a grievance form and handed it to Thomas. Thomas asked for a more detailed, typed complaint and Plaintiff resubmitted a more thorough grievance form on February 5, 2004. The form was mailed to Human Resources. Stahl terminated Plaintiff's employment on February 6, 2004.

Defendant claims that Dupre instructed Stahl to lay off Plaintiff prior to Plaintiff turning in her grievance form on February 5, 2004, and that the decision was made without knowledge of the grievance submission. On February 12, 2004, Plaintiff filed a Charge of Discrimination with the EEOC and a "Dismissal and Notice of Rights" was issued on February 17, 2004. Plaintiff filed this complaint on March 8, 2004, alleging (1) gender-based hostile environment created by Messina's statements and (2) Title VII retaliation based on the fact that she was terminated after the filing of a grievance. Defendant requests summary judgment on both claims. (Rec. Doc. No. 17 at 9-10, 12-13).

## LAW AND ANALYSIS

### A. Summary Judgment

Summary judgment is proper if the pleadings, depositions, interrogatory answers and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the non-moving party, the non-movant must produce specific facts to

4

demonstrate that a genuine issue exists for trial. <u>Webb v. Cardiothoracic Surgery Associates of North Texas</u>, 139 F.3d 532, 536 (5th Cir. 1998). The non-movant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. <u>Id.</u> Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. <u>Travelers Ins. Co. v. Liljeberg Enter., Inc.</u>, 7 F.3d 1203, 1207 (5th Cir. 1993).

### B. Title VII Retaliation Claim

In order to overcome a motion for summary judgment on her Title VII retaliation claim, Plaintiff must first establish, by a preponderance of the evidence, a prima facie case of discrimination. <u>Shackelford v. Deloitte & Touche</u>, 190 F.3d 398, 407 (5th Cir. 1999); <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). To establish a prima facie case of retaliation, Plaintiff must establish that, "(1) the employee has engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) causal connection exists between that protected activity and the adverse employment action." <u>Hernandez v. Crawford Bldg. Material Co.</u>, 321 F.3d 528, 531 (5th Cir. 2003) (citing <u>Burger v. Cent. Apartment Mgmt., Inc.</u>, 168 F.3d 875, 878 (5th Cir. 1999)).

The first question is whether Plaintiff engaged in activity protected by Title VII. Such protected activity includes

participating in enforcement proceedings or opposing unlawful employment practices. 42 U.S.C. § 2000e-3(a). Formal participation, such as filing a charge with the E.E.O.C., is not the only means by which an employee engages in a protected activity. 42 U.S.C. § 2000e-3(a); Green v. Adm'rs of Tulane Educ. Fund, 284 F.3d 642, 657 (5th Cir. 2002) (protected activity under Title VII requires only that a plaintiff charge or oppose unlawful employment practices). Mere opposition to unlawful employment practices, including internal informal complaints, are also sufficient to invoke the protections of Title VII. Fierros v. Tex. Dep't of Health, 274 F.3d 187, 194 (5th Cir. 2001) (filing an internal discrimination complaint is a protected activity under Title VII).

Here, the record is replete with examples of internal, informal complaints of improper employment practices. For example, Plaintiff complained in August 2003 that work assignments were gender discriminatory. (Rec. Doc. No. 18). Defendant does not contest this. (Rec. Doc. No. 17). Also, Plaintiff requested leave in October 2003, noting in the remarks, "apt w/ EEOC in City of N.O."; this request was approved and signed by Thomas. (Rec. Doc. No. 18; Ex. "N"). Further, Plaintiff filed a one page grievance in January 2004, and a more detailed nine-page grievance in February 2004, complaining of, among other things, gender discrimination. (Rec. Doc. No. 18; Ex. I). A preponderance of the evidence demonstrates that these complaints, though varying in manner and

formality, were meant to oppose alleged employment activities violative of Title VII, and are therefore protected activities. <u>See e.g.</u>, <u>Fierros</u>, 274 F.3d at 194.

The second issue is whether the employer took adverse employment action against the employee. Defendant stipulates that termination is an adverse employment action, and that Plaintiff was terminated. (Rec. Doc. No. 17); <u>see also, e.g.</u>, <u>Shackelford</u>, 190 F.3d at 407.

The third issue is whether a causal connection exists between that protected activity and the adverse employment action. A "causal link" is established when the evidence demonstrates that "the employer's decision to terminate was based in part on knowledge of the employee's protected activity." <u>Medina v. Ramsey Steel Co., Inc.</u>, 238 F.3d 674, 684 (5th Cir. 2001). Close timing between an employee's protected activity and the employer's adverse action may provide this causal connection. <u>Evans v. City of Houston</u>, 246 F.3d 344, 354 (5th Cir. 2001). In <u>Evans</u>, the court noted that a time lapse of four months would be considered sufficiently close. <u>Id.</u> Here, protected activity occurred within four months of termination (the October leave request, the January grievance, and the February grievance), with the last suspiciously occurring just one day before Plaintiff's termination. Defendant claims Dupre has the sole responsibility for terminating employees, and that she was not aware of the February grievance form when the

decision to terminate Plaintiff was made; therefore no causal connection between a protected activity and the termination decision exists. (Rec. Doc. No. 17). However, the deposition of Thomas seems to refute this, indicating Thomas notified Dupre that Plaintiff submitted the grievance, and submitted a copy to her. (Ex. C, pp. 69-70). Additionally, Plaintiff submits direct evidence of causation via Thomas's deposition:

> Q: So the controversy between her and Mr. Messina is what caused her lay off to be at the time?
>
> A: Well, the need to put a supervisor in the office was what caused the need at that time.
>
> Q: But for the controversy, she wouldn't have been laid off at that time?
>
> A: I think not. I think, you know, if they work together, it would have been a smooth running issue.

(Ex. C, pp. 72-73.) Stahl agreed with Thomas' testimony. (Ex. P, p. 18). Considering this evidence in the light most favorable to the non-moving party, a causal connection exists between Plaintiff's protected activities and her termination. In sum, Plaintiff has established a prima facie case of retaliation.

A prima facie case of discrimination, once established, raises a presumption of discrimination. McDonnell Douglas, 411 U.S. at 804. However, the defendant may rebut this presumption by articulating a legitimate, nondiscriminatory reason for its

8

actions. See <u>Meinecke v. H & R Block</u>, 66 F.3d 77, 83 (citing <u>Texas Dep't. of Community Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981)). Defendant claims Plaintiff was laid off in order stay within the department's budget guidelines, as the department allegedly sought a new supervisor for that office. (Rec. Doc. No. 17). Defendant has met its burden of production by articulating a legitimate, non-discriminatory reason for the termination.

Once an employer articulates a legitimate, nondiscriminatory purpose for terminating an employee, the employee must demonstrate that the employer's purpose was a mere pretext for prohibited discrimination. <u>McDonnell Douglas</u>, 411 U.S. at 804. In order to survive a summary judgement motion, Plaintiff need only raise a genuine issue of material fact as to whether Plaintiff has established pretext. <u>Nichols v. Loral Vought Sys. Corp.</u>, 81 F.3d 38, 41 (5th Cir. 1996). As evidence of pretext, Plaintiff submits, among other things, the testimony of Thomas and Stahl which indicates that no supervisor was needed at the Plaintiff's office but for the Plaintiff's complaints; that she was terminated because of those complaints; and that no supervisor has been hired at that location since Plaintiff was terminated. (Rec. Doc. No. 18). Further, while Defendant claims discussions with superiors as to finding a supervisor for that office began before Warner retired, by her own testimony she never filled out the required requisition form for the position, nor had she otherwise formally requested

9

appointment of a manager. (Ex. B, pp. 27-29). Considering this evidence in the light most favorable to the non-moving party, Plaintiff here raises a genuine issue of material fact as to whether Defendant's proffered reason for termination is mere pretext or not.

## C. Gender-based Hostile Work Environment Claim

The plaintiff in a hostile work environment claim must establish that: (1) she belongs to a protected class, (2) she was subjected to unwelcome harassment, (3) the harassment complained of was based on sex, (4) the harassment complained of affected a term, condition, or privilege of employment, and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. E.g., Adm'rs of Tulane Educ. Fund, 284 F.3d at 655. Further,

> "Conduct sufficient to create a hostile working environment must be severe or pervasive. In order to state a cause of action under Title VII, a sexually objectionable environment must be both subjectively and objectively offensive. Whether an environment is hostile or abusive depends on a totality of circumstances, focusing on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance."

Id. at 655-56 (internal citations omitted); see Meritor Savings Bank FSB v. Vinson, 477 U.S. 57, 67 (1986).

Plaintiff fails to allege that Messina's conduct, while boorish and subjectively offensive, was severe and pervasive to the extent that it was objectively offensive. Plaintiff's February 5th grievance presents nine pages of conduct demonstrating Messina's loutishness and laziness. (Rec. Doc. No. 18 at Ex. J). However, only two of the 17 statements attributed to Messina were gender-based ("It's woman's work", "The back row of desks is for men only"), and the rest were gender-neutral (e.g., "You better do it, or else", "Little Miss Boo Peep is going to be history", "I am your boss", "It will never happen"). Id.

Title VII is not intended to be a general work place civility code, nor a judicially-enforced charm school. See Oncale v. Sundowner Offshore Servs., 523 U.S. 75 (1998); Meritor, 477 U.S. at 67. Instead, Title VII is intended to reach instances where one's workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter conditions of victim's employment and create abusive working environment." Oncale, 523 U.S. at 78. Where unsavoriness becomes unlawful is not a clearly drawn line, but it does not reach, for example, the mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee. Meritor, 477 U.S. at 67. Looking at the totality of the circumstances, even in a light

11

most favorable to the Plaintiff, no reasonable jury could find that only two gender-based comments, out of seventeen complained of during a six-month period, can be considered sufficiently frequent or severe, particularly where Plaintiff was one of only three employees in the office and discriminatory interactions would be more frequent.

Compare, for example, Shepherd v. Comptroller of Pub. Accounts, 168 F.3d 871 (5th Cir. 1999), where the Fifth Circuit found the following conduct insufficiently severe to state a claim for a gender-based hostile work environment claim: a male co-worker told a female employee, "your elbows are the same color as your nipples" and "you have big thighs", on several occasions simulated or attempted looking under her dress and down her clothing, touched her arm on several occasions, rubbed one of his hands from her shoulder down to her wrist while standing beside her, and on two occasions, when she looked for a seat after coming in late to an office meeting, he patted his lap and remarked "here's your seat." Id. at 872. In that case, the Fifth Circuit affirmed a district court's grant of summary judgement, reasoning that the male co-worker's statements were equivalent to a mere utterance of an epithet that endangers offensive feelings, and that the harassing actions, although offensive, were not the type of extreme conduct that would prevent the plaintiff from succeeding in the workplace. Id. at 874. Likewise, given the circumstances, Messina's two

gender-based comments, particularly among the numerous non-gender-based remarks, did not rise above the mere utterances permitted by <u>Meritor</u>, and were not objectively offensive nor sufficiently severe or pervasive to establish a hostile work environment claim. Construing the evidence in a light most favorable to the Plaintiff, no set of facts exist upon which a reasonable jury could find that Messina's conduct reached the severity and frequency required to establish a hostile work environment claim cognizable under Title VII.

For the foregoing reasons, **IT IS ORDERED** that Defendant's motion for summary judgment as to the retaliation claim be **DISMISSED**, and Defendant's motion for summary judgment as to the hostile work environment claim be **GRANTED**.

New Orleans, Louisiana, this <u>17th</u> day of <u>March</u>, 2006.

IVAN L.R. LEMELLE
UNITED STATES DISTRICT JUDGE